**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0437-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AKEEME THOMPSON, a/k/a
AKEEM J. THOMPSON,

    Defendant-Appellant.

_____

Argued September 13, 2021 – Decided September 22, 2021

Before Judges Fasciale and Vernoia

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-06-1722.

Zachary Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Zachary Markarian, of counsel and on the briefs).

Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, III, Acting Essex County Prosecutor, attorney; Barbara A. Rosenkrans, of counsel and on the brief).

PER CURIAM

Defendant appeals from his convictions for first-degree murder, N.J.S.A. 2C:11-3(a)(1)(2) (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three). Defendant received an aggregate prison term of sixty years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. We conclude the cumulative effect of the errors committed during the trial had the probable effect of rendering the trial unfair. We therefore reverse.

Shortly after 1 a.m. on April 3, 2017, police responded to reports of shots fired outside of 98 Ashland Avenue in East Orange and found the victim struck by gunfire. The victim was transported to the hospital, where he later died. The Medical Examiner determined his death had been caused by multiple gunshot wounds.

Immediately before that shooting, the victim called Patricia Keys, the mother of his two children, who lives five hours away in Pennsylvania. When Keys answered the call, the victim told her that "Mack just pulled a gun" on him. Keys responded, "Mack? Mack who," to which the victim responded, "[o]ur

Mack." After that, the victim failed to respond. Police recovered twelve forty-caliber cartridge casings from the vicinity of the shooting.

Detective Murad Muhammad canvassed the area of the shooting. He "develop[ed] a secondary location that was relevant" to the investigation: 129 North Arlington Avenue, the Hampshire House apartment building three blocks away from the shooting where defendant regularly stayed with the mother of his children, Dominique Jackson. That same day, Detective Hervey Cherilien went to 129 North Arlington Avenue and retrieved video footage. Officers also obtained video footage from 98 Ashland Avenue, the location of the shooting.

Thereafter, Muhammad traveled to Keys' home with Detective Maritza Colon.[1] Colon showed a photo array to Keys, who identified defendant as the as the person the victim referred to as Mack. Defendant was charged with the murder and arrested. Thereafter, he was taken to the Homicide Major Crimes unit, where Muhammad and Cherilien interrogated him.

---

[1] Prior to trial, Detective Colon changed her last name from Colon to Gonzalez. On this record, she has been referred to as Colon, which we have adopted for purposes of this opinion.

The parties dispute whether officers informed defendant that he had been charged with the murder before asking him to waive his <u>Miranda</u>[2] rights. Muhammad testified at the hearing that he informed defendant he had been charged with murder before he began the recording and that the arresting officer, Sergeant Smith, also informed him of the charges. After Muhammad read defendant his <u>Miranda</u> rights, defendant refused to initial the form. Muhammad asked defendant if he understood his rights, and defendant replied that he did. Muhammad nonetheless signed the <u>Miranda</u> form to document he had read the form to defendant, and Cherilien signed as a witness.

During the interrogation, defendant said that the victim was a friend, but defendant denied being present at the shooting or having any knowledge of the incident. Muhammed showed defendant a photo of an individual entering 129 North Arlington Avenue at 1:26 a.m. on April 3, who defendant identified as himself. Muhammad then showed defendant a photo from the same day, which he claimed showed a person entering 129 North Arlington Avenue wearing "the same clothes" defendant was wearing in the first photo. Defendant said the photo was blurry, and he could not make out identifying details.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-0437-18

Dominique Jackson consented to a search of her apartment. After the search, police recovered a forty-caliber Glock handgun magazine but could not determine whether the magazine had been fired. Muhammad took a statement from Jackson, who identified defendant as the person shown in a photograph entering her building at 1:26 a.m.

On appeal, defendant raises the following arguments for this court's consideration:

POINT I

[DEFENDANT] WAS NOT INFORMED OF THE CHARGES AGAINST HIM BEFORE DETECTIVES ASKED HIM TO WAIVE HIS RIGHT AGAINST SELF-INCRIMINATION. HIS WAIVER WAS THEREFORE NOT KNOWING AND VOLUNTARY AND THE TRIAL [JUDGE'S] ERRONEOUS ADMISSION OF HIS STATEMENTS VIOLATED HIS FIFTH AMENDMENT RIGHTS. (Raised below).

A. The Trial [Judge] Erroneously Considered Whether [Defendant] Was Informed [O]f [T]he Charges Against Him Prior [T]o Waiving His Rights [A]s Merely "One Factor Out [O]f Many" [I]n Determining Whether His Waiver Was Knowing [A]nd Voluntary. (Raised below).

B. The Trial [Judge's] Finding That [T]he Video "Captured" Detective Muhammad Informing [Defendant] He Was Charged With Murder [I]s Not Supported [B]y

5

Sufficient Credible Evidence [I]n [I]he Record.  (Raised below).

C. The State Failed [T]o Meet Its Burden [T]o Show Beyond [A] Reasonable Doubt That Detectives Informed [Defendant] He Was Charged [W]ith Murder Prior [T]o Seeking His Waiver.  (Raised below).

POINT II

REVERSAL IS REQUIRED BECAUSE THE STATE PRESENTED INADMISSIBLE LAY OPINION TESTIMONY IN WHICH DETECTIVES CLAIMED VIDEO FOOTAGE DEPICTED THE SHOOTER WEARING A SWEATSHIRT MATCHING THAT WORN BY DEFENDANT ON THE SAME NIGHT. (Raised below).

POINT III

REVERSAL IS REQUIRED BECAUSE THE STATE PRESENTED PREJUDICIAL HEARSAY EVIDENCE INDICATING THAT, DURING A CANVAS THE DAY OF THE SHOOTING, UNNAMED WITNESSES IMPLICATED [DEFENDANT] AND DIRECTED OFFICERS TO HIS PLACE OF RESIDENCE. (Partially raised below).

POINT IV

THE CUMULATIVE EFFECT FOR THE AFOREMENTIONED ERRORS DENIED [DEFENDANT] A FAIR TRIAL.  (Not raised below).

6

POINT V

[DEFENDANT'S] SENTENCE IS EXCESSIVE
BECAUSE THE [JUDGE] IMPROPERLY WEIGHED
IN AGGRAVATION HIS PRIOR ARRESTS THAT
DID NOT RESULT IN CONVICTIONS.  (Not raised
below).

In reply, defendant also raises the following arguments for this court's

consideration, which we have renumbered:

[POINT VI]

POLICE DID NOT INFORM [DEFENDANT] OF THE
CHARGES AGAINST HIM BEFORE SEEKING HIS
WAIVER.      HIS    STATEMENT    MUST    BE
SUPPRESSED.  (Raised below).

[POINT VII]

THE    TRIAL    [JUDGE]    SHOULD    NOT    HAVE
ALLOWED DETECTIVE MUHAMMAD TO OFFER
LAY OPINION TESTIMONY ON THE CENTRAL
ISSUE    FOR    THE    JURY'S    DETERMINATION.
(Raised below).

I.

We first address defendant's contention that his statement was not

knowing and voluntary because the officers did not inform him that he was

charged with the victim's murder before seeking his Miranda waiver.

Particularly, defendant argues that the judge applied the incorrect legal standard

7

in determining voluntariness,[3] that the judge's finding that Muhammad apprised him of his charges during the recorded interrogation is unsupported by the record, and that there exists no other credible evidence that officers otherwise apprised him of his charges.

We defer to the trial judge's evidentiary rulings absent an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021). We review the trial judge's evidentiary rulings "under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial [judge's] discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). However, we will review an evidentiary decision de novo if—like here—the judge applies the wrong legal standard in deciding to admit or exclude the evidence. State v. Trinidad, 241 N.J. 425, 448 (2020).

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. Sims, 466 N.J. Super. 346, 363 (App. Div. 2021) (quoting State v. S.S.,

_____

[3] The State does not dispute that the judge applied the incorrect standard but maintains that her underlying ruling—that the officers apprised defendant of the charges against him before seeking his waiver—was ultimately correct.

229 N.J. 360, 381-82 (2017)).  In determining whether a defendant's incriminating statement is admissible, the State must "prove beyond a reasonable doubt that the suspect's waiver [of rights] was knowing, intelligent, and voluntary."  Ibid. (quoting State v. A.M., 237 N.J. 384, 397 (2019)).  A judge will typically evaluate whether the State has satisfied its burden by considering the "totality of the circumstances."  Ibid. (quoting A.M., 237 N.J. at 398).  Under this standard, a judge will consider factors such as the defendant's "age, education and intelligence, advice as to constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved."  Ibid. (quoting A.M., 237 N.J. at 398).

To make a knowing and intelligent waiver of the right to remain silent, a defendant must have been advised of the nature of the charges being brought against him or her.  State v. Vincenty, 237 N.J. 122, 132-34 (2019); State v. A.G.D., 178 N.J. 56, 68 (2003).  In A.G.D., the Court held that a defendant's waiver of Miranda rights is invalid when the police fail to inform the defendant that a criminal complaint has been filed, or arrest warrant has been issued, against him or her.  178 N.J. at 58-59.  There, the Court explained:

> a criminal complaint and arrest warrant signify that a veil of suspicion is about to be draped on the person,

> heightening his risk of criminal liability. Without advising the suspect of his true status when he does not otherwise know it, the State cannot sustain its burden to the Court's satisfaction that the suspect has exercised an informed waiver of rights, regardless of other factors that might support his confession's admission.

[Id. at 68.]

In Vincenty, the Court reiterated its adherence to A.G.D. and held that interrogating officers must not only inform a suspect that an arrest warrant or complaint has been issued or filed but must also notify the suspect of the charges. 237 N.J. at 126. Where defendant is not apprised of this information, "the State cannot sustain its burden" of proving a suspect has knowingly and intelligently waived the right against self-incrimination. Id. at 134 (quoting A.G.D., 178 N.J. at 68); State v. Nyhammer, 197 N.J. 383, 404 (2009) (explaining that under A.G.D., the failure to inform a suspect who has already been charged at the time of interrogation of the charges against them renders the suspect's waiver "per se invalid").

Here, the record reflects that defendant was already charged when detectives sought his waiver. In assessing the impact of the alleged failure to inform defendant of the murder charge against him, the judge incorrectly applied the totality of the circumstances test. The judge explained that whether a suspect is informed of the charges against him "is only one factor out of many to be

considered in the totality of the circumstances analysis, and it does not impede his waiver to such a degree as to be considered not voluntary, intelligent, and knowing." We apply the standard set forth in A.G.D. and reaffirmed in Vincenty. Under this standard, we conclude the State failed to satisfy its burden to prove that police informed defendant of the charges against him before seeking his Miranda waiver.

The judge noted "Detective Muhammad testified at the evidentiary hearing that he informed the [d]efendant that he was going to interview him and that he was charged with murder before informing the [d]efendant of his Miranda rights and before the interrogation began." The judge found that "[t]his was captured in . . . the recording of the interrogation on April 13, 2017." But the recording does not support the judge's finding as it does not show Muhammad informing defendant that he had been charged before the interrogation. In the recording, Muhammad states only that "I am going to ask you certain questions regarding H number 22-17, a homicide." The State contends that this statement effectively informed defendant of the charge he faced.

Defendant correctly points out that this statement "informed [defendant] only that police wanted to talk to him about a homicide, not that he had in fact

already been charged with one." Defendant asserts that this is "precisely the type of incomplete disclosure that our Supreme Court found did not satisfy the requirement of a knowing and voluntary waiver in A.G.D." In A.G.D., the Court found that the detectives' explanation that they sought to interview the defendant about allegations of sexual abuse asserted against him, without specifying the charges, impeded the defendant's ability to knowingly and intelligently waive his right against self-incrimination. 178 N.J. at 59. Here, Muhammad informed defendant only that he was going to interview defendant about "a homicide," not that he was going to question defendant about the murder of the victim, with which defendant had already been charged. Given the incomplete disclosure, defendant's ability to knowingly and intelligently decide whether to waive his right against self-incrimination was fundamentally altered. Vincenty, 237 N.J. at 135.

Apart from the judge's factual error, the State erroneously contends that Smith, the arresting officer, told defendant he had been charged with murder during his arrest. The judge found Muhammad credible and "although less persuasive," the judge also found credible Muhammad's testimony that Smith told defendant that he was under arrest for the murder of the victim. Importantly, Muhammad was not present at the time of defendant's arrest, he

12

admitted he did not hear Smith tell defendant he was charged with murder, and he did not provide an explanation for why he believed that Smith had done so. The State asks us to defer to the judge's finding on this point because "the [judge] below knew all of this and still found Detective Muhammad credible." Although this court will defer to credibility determinations, that deference is not "blind." S.S., 229 N.J. at 381. We reject the State's call for deference, especially where Muhammad was not present at the arrest, did not hear Smith inform defendant of the charges, and where Smith himself did not testify.

Finally, the State contends that even if it cannot meet its burden to show Muhammad or Smith told defendant he was charged, it should have been clear to defendant he had been charged. The State asserts that defendant must have known at the time of his arrest that "the officers weren't there for a friendly poker game." We reject this argument, which finds no support in our case law. On this record, and in light of the applicable legal standard, the State failed to meet its burden, and the statement should have been excluded.

The admission of defendant's inculpatory statement was undoubtedly prejudicial. While defendant denied being present at the shooting, or having any involvement in it, he identified himself as the person shown in surveillance video entering the Hampshire House Apartments. In doing so, he placed himself

13

three blocks from the shooting shortly after it occurred, which the State relied upon heavily and sought to corroborate at trial. Essential to the State's case was proving that the shooter, who appears briefly on surveillance video from outside 98 Ashland Avenue, was the same person shown in surveillance footage from 129 North Arlington Avenue, who defendant identified as himself in his statement. This could not have been accomplished without defendant's statement. We, therefore, conclude that the error is "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Daniels, 182 N.J. 80, 95 (2004) (alteration in original) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

## II.

The prejudicial effect of the admission into evidence of defendant's statement was further exacerbated by the erroneous admission of the detective's lay opinion testimony about what the surveillance videos depicted. At trial, Muhammad and Cherilien narrated surveillance video taken at both locations. Defendant specifically argues that the judge erred in overruling defense counsel's objection to Muhammad's lay opinion testimony because he had no firsthand knowledge of the events in the video, and his testimony invaded the province of the jury.

14

As to the video footage from 129 North Arlington Avenue, Cherilien repeatedly described the video as showing an individual wearing a black-hooded sweatshirt with a "circular emblem" on the left side of his chest entering the apartment at 1:26 a.m. on the night of the shooting. The State then played the portion of defendant's interrogation where he identified himself as the person seen entering 129 North Arlington Avenue at that time, thereby seeking to establish that defendant was wearing a sweatshirt with what Cherilien described as a "circular emblem" on the night of the shooting.

Later, the State asked Muhammad to describe what he saw when viewing the video footage that captured the shooting outside of 98 Ashland Avenue. Defense counsel objected, explaining that "the jury has to make a determination what the video shows. They are the fact-finders. It is not for this witness to make a determination and tell them what the video shows." During the sidebar, defense counsel noted that Muhammad had identified the victim in the video and stated she would object to any question eliciting testimony from Muhammad as to "who the other people are" in the video because that question was for the jury. The judge rejected the objection as premature, telling defense counsel to "wait until . . . something that you object to is actually before me, and then I can rule on it without predicting what the State is going to ask next." Defense counsel

A-0437-18

reiterated that the prosecutor could not ask Muhammad to identify the individuals shown in the video. The judge overruled the objection and did not offer further guidance as to the narration.

The prosecutor played video of the shooting and asked Muhammad whether he had "[b]ecome aware of anything particular that . . . any particular clothing that the shooter was wearing?" in the still photograph marked S-173, taken at 1:41 a.m. Muhammad responded that he noticed a sweatshirt that had "an emblem on his left chest that was circular." The prosecutor then showed Muhammad a still image captured at 1:40 a.m. The prosecutor asked if Muhammed could see the same emblem on the sweatshirt, to which Muhammad responded "absolutely." Defense counsel renewed her objection that Muhammad should not be permitted to narrate the video, as it was for "the jury's determination as to what they're able to see." The judge again overruled the objection without providing further instruction.

"[T]he determination of whether a person is competent to be a witness lies within the sound discretion of the trial judge." State v. G.C., 188 N.J. 118, 133 (2006) (quoting State v. Savage, 120 N.J. 594, 632 (1990)). "We defer to a trial judge's evidentiary ruling absent an abuse of discretion" and "will not substitute [our] judgment unless the evidentiary ruling is 'so wide of the mark' that it

constitutes 'a clear error in judgment.'" Garcia, 245 N.J. at 430 (quoting State v. Medina, 242 N.J. 397, 412 (2020)). This court also defers to a judge's findings based on video recording or documentary evidence that is available for review. State v. Tillery, 238 N.J. 293, 314 (2019).

Recently, in State v. Singh, our Supreme Court addressed the requirements of lay opinion testimony. 245 N.J. 1, 14 (2021). The Court began its analysis by examining the purpose and boundaries of N.J.R.E. 701, which provides:

> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it:
>
> (a) is rationally based on the witness' perception; and
>
> (b) will assist in understanding the witness' testimony or determining a fact in issue.

The Court in Singh stressed that "[t]he purpose of N.J.R.E. 701 is to ensure that lay opinion is based on an adequate foundation." 245 N.J. at 14 (alteration in original) (quoting State v. Bealor, 187 N.J. 574, 586 (2006)).

N.J.R.E. 701(a) "requires the witness's opinion testimony to be based on the witness's 'perception,' which rests on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." Ibid. (quoting State v. McLean, 205 N.J. 438, 457 (2011)). "[U]nlike expert opinions, lay opinion testimony is limited to what was directly perceived by the witness and may not

rest on otherwise inadmissible hearsay." Id. at 27 (alteration in original) (quoting McClean, 205 N.J. at 460).

Our case law illustrates the application of N.J.R.E. 701(a). In State v. Lazo, our Supreme Court held that "lay witness testimony is permissible where the witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'" 209 N.J. 9, 22 (2012) (quoting United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005)). In Lazo, a detective who "had not witnessed the crime and did not know [the] defendant" testified that he chose the defendant's arrest photograph for a photo array because it looked like a composite sketch prepared based on a witnesses' descriptions of the suspect. Id. at 24. The Court observed that this testimony, which was not based on the detective's perception, made clear his approval of the victim's identification by relaying that "he, a law enforcement officer, thought defendant looked like the culprit as well." Ibid. The Court, therefore, concluded that the testimony failed to meet N.J.R.E. 701(a).

In Singh, a surveillance video captured an armed robbery, and the arresting officer was properly permitted to testify that the sneakers worn by the perpetrator in the surveillance video were similar to the sneakers worn by the defendant when the officer encountered him shortly after the robbery. 245 N.J.

18

at 5-7. Although the officer had not witnessed the crime in <u>Singh</u>, he had firsthand knowledge of the sneakers in the immediate aftermath of the crime because he saw them as he was arresting the defendant. <u>Id.</u> at 19-20. The Court, therefore, concluded that the narration testimony met the requirements of N.J.R.E. 701(a). <u>Id.</u> at 19.

This case is distinguishable from <u>Singh</u> because Muhammad's testimony about the clothing worn by the shooter was not based on his firsthand knowledge or perception. Unlike <u>Singh</u>, where the arresting officer testified based on his perception of the defendant's shoes at the time of arrest, Muhammad was not present for the events depicted in the footage, was not the arresting officer, and, therefore, had no familiarity with defendant or the sweatshirt at issue. Moreover, in contrast to the officer in <u>Singh</u>, who offered opinion testimony comparing the clothing in a video to the clothing he had observed while arresting defendant, Muhammad compared video footage to other video footage. Muhammad's testimony was therefore not "rationally based on [his] perception" as required under N.J.R.E. 701(a).

N.J.R.E. 701(b) requires that lay opinion testimony be "limited to testimony that will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed

A-0437-18

factual issue." Singh, 245 N.J. at 15 (quoting McLean, 205 N.J. at 458). A witness may not offer lay opinion on a matter "as to which the jury is as competent as [the witness] to form a conclusion." McLean, 205 N.J. at 459 (quoting Brindley v. Firemen's Ins. Co., 35 N.J. Super. 1, 8 (App. Div. 1955)); see also Biunno, Weissbard & Zegas, New Jersey Rules of Evidence, cmt. 3 on N.J.R.E. 701 (2021).

In Singh, like here, the defendant argued that the officer's testimony was inadmissible under N.J.R.E. 701(b) because the jury just as easily could have made the comparison when they were presented the surveillance video and the sneakers. 245 N.J. at 19. The Court disagreed, concluding that N.J.R.E. 701(b)

> does not require the lay witness to offer something that the jury does not possess. Nor does it prohibit testimony when the evidence in question has been admitted, as it was here.
>
>  . . . .
>
> Simply because the jury may have been able to evaluate whether the sneakers were similar to those in the video does not mean that [the detective's] testimony was unhelpful. Nor does it mean that [the detective's] testimony usurped the jury's role in comparing the sneakers. Indeed, the jury was free to discredit [the detective's testimony] and find that the sneakers in evidence were dissimilar to those on the surveillance video.
>
> [Id. at 19-20.]

20

Notably, in Singh, the jury saw the same surveillance video that the detective saw, and the jury saw the physical sneakers taken from the defendant that the detective saw. The same cannot be said here, where the sweatshirt worn by defendant was not entered into evidence and could not form the basis of comparison for the jury. Here, the jury was no less competent than Muhammad to form a conclusion as to what the recordings depicted. See McClean, 205 N.J. at 459.

Most recently, in State v. Sanchez, ___ N.J. ___ (2021), our Court clarified considerations a judge should make before admitting lay opinion testimony under N.J.R.E. 701(b). During a homicide investigation, the Prosecutor's Office circulated a flyer entitled "Attempt to Locate" that included a still photo derived from surveillance video where the faces of two male passengers were visible. Id. at ___ (slip op. at 5). In response to the flyer, a parole agent contacted the detective leading the investigation. Id. at ___ (slip op. at 6). Defendant filed a motion to preclude the testimony, arguing that the parole agent, who was not present when the shooting occurred or when the surveillance video was taken, could not provide testimony that satisfies N.J.R.E. 701. Id. at ___ (slip op. at 7). The Court found that the testimony met N.J.R.E. 701(b) based on the agent's extensive contacts, namely thirty in-person parole

visits, the absence of any other identification testimony, and the quality of the surveillance photograph.  Id. at ___ (slip op. at 17).

The Court outlined factors that should inform a judge's determination whether lay opinion testimony will assist the jury.  Id. at ___ (slip op. at 18).  First, the "nature, duration, and timing of the witness's contacts with the defendant."  Ibid.  Second, "if there has been a change in the defendant's appearance since the offense at issue."  Id. at ___ (slip op. at 21) (citing Lazo, 209 N.J. at 23).  Third, "whether there are additional witnesses available to identify the defendant at trial."  Ibid. (citing Lazo, 209 N.J. at 23).  And fourth, the quality of the photograph or video.  Ibid.  As to the final consideration, the Court noted that "[i]f the photograph or video recording is so clear that the jury is as capable as any witness of determining whether the defendant appears in it, that factor may weigh against a finding that lay opinion evidence will assist the jury."  Id. at ___ (slip op. at 22).  "Conversely, if the photograph or video recording is of such low quality that no witness—even a person very familiar with the defendant—could identify the individual who appears in it, lay opinion testimony will not assist the jury, and may be highly prejudicial."  Ibid.

Applying the factors set forth in Sanchez, Muhammad's testimony does not satisfy N.J.R.E. 701(b).  As to the first factor, Muhammad had insufficient

contacts with defendant to achieve a level of familiarity to render his opinion helpful, especially considering he was not present when the crime took place and was not the arresting officer. As to the second factor, Muhammad observed defendant's appearance during his interrogation. However, defendant was not wearing the clothing at issue during this time. As to the third factor, there were no other witnesses to identify the person shown in the recording. Notwithstanding this fact, and unlike in Singh, Muhammad was in no special position to offer his opinion as to what the video showed because he lacked firsthand knowledge. Finally, as to the fourth factor, the lay opinion testimony is highly prejudicial given how blurry the video footage and still photographs are.

The State contends that out-of-state case law supports the admission of Muhammad's testimony on this point. Citing Illinois law, the State claims that "[t]he so-called 'lack of clarity' of the video is even more reason the jury needed Muhammad's narration of the video." Sanchez and Lazo clearly contravene this argument. In Sanchez, the Court cited to a First Circuit decision, where the First Circuit observed that a lay witness's testimony identifying a defendant in a surveillance photograph is helpful to the jury "when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also

possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification." Id. at ___ (slip op. at 22) (quoting United States v. Jackman, 48 F.3d 1, 4-5 (1st Cir. 1995)); see also Lazo, 209 N.J. at 24 (noting that if a video that the jury is able to review for itself is unclear, a police witness who has no prior knowledge of the events is not permitted to "invade the jury's province" by supplying his or her own interpretation). Here, Muhammad was no better suited than the jury to interpret the video. The Sanchez factors clearly weigh in favor of disallowing the testimony under N.J.R.E. 701(b), as it will not assist the jury. Because the testimony did not satisfy the prerequisites of N.J.R.E. 701, and in light of the Court's decisions in Singh and Sanchez, the testimony should not have been admitted.

Although we might not conclude that Muhammad's testimony identifying defendant in the video itself constitutes harmful error, we are convinced that the cumulative effect of its admission with the erroneous admission of defendant's statement rendered his trial unfair. The lay testimony was prejudicial where it was presented by a law enforcement officer and concerned the central issue for the jury's resolution—the shooter's identity. Moreover, the judge gave no immediate instruction to the jury on how to interpret Muhammad's narration and

gave only general credibility and identification instructions at the close of defendant's case, which were insufficient to remove any potential prejudice from the testimony.

The remainder of the State's case is circumstantial, consisting of blurry surveillance footage and the testimony and identification of Keys, who was not present at the time of the shooting. There were no eyewitnesses at the scene and no forensic evidence connecting defendant to the crime. The error, in light of the overall strength of the State's case, is "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." Daniels, 182 N.J. at 95 (alteration in original) (quoting Macon, 57 N.J. at 336).

We need not consider defendant's remaining arguments since these cumulative errors alone warrant a new trial.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0437-18